Good morning. I'm Katherine Dykus. I'm an attorney for Yvonne Jones. I want to focus my argument today on the unconvincing reasons for rejecting the symptom testimony of Ms. Jones. I am arguing that the ALJ really mischaracterized the treatment notes to reject her testimony. One of the things that they used to reject her testimony was a treatment note of September 2018 of mild weakness findings and I think it's really important in that same treatment note, her doctor stated that she was not any better and this treatment note was used to reject her testimony that she was not improved and her own doctor said that she was not any better. Additionally, she had findings of atrophy in her legs, numbness and tingling down her legs and if you compare that weakness finding to the November 2017 treatment note, it also has mild weakness so that's very consistent with her testimony that she has not improved from her treatment. She has a very invasive exhaustive treatment. She exhausted her treatment options. She had a fusion. She had a spinal cord stimulator. She had injections. Ms. Dykus, I think the ALJ did provide a general summary that touched on on all of these questions. I guess, where would we look in the ALJ's opinion to focus in on the key aspects that the ALJ might have missed with respect to her symptom testimony? So, in, I don't have the transcript number, but where he states that he agrees that there's some symptoms from treatment, there's a paragraph where he states that they're not as severe as she testifies to and he states a couple of reasons. One of those reasons is improvement with this drug called Cosentex and that was for her psoriatic arthritis and Cosentex was a drug where she did have some relief. However, Cosentex impairs wound healing so she cannot take that drug while she's having all these invasive treatments for back pain. Further, her, Dr. Shaheda notes in his treatment note in January 2019, which is transcript 1110, that she was only able to take Cosentex briefly because of the surgery. She also lost her insurance and Dr. Shaheda is her rheumatologist, which is one of the few rheumatologist opinions in the record that discusses psoriatic arthritis. Counsel, while you're talking about Dr. Shaheda, and I'm going to ask this question of your friend as well. The government says at page 7 of their brief as a heading for one of the sections, Dr. Shaheda completed a check the box questionnaire assessing extreme limitations. There are check the box questionnaires that doctors can and do fill out. Do you view Dr. Shaheda's questionnaire, which I think starts at ER 1976, as a check the box questionnaire? Well, simply because there's box that are being checked doesn't mean that you can ignore the content of what's being said. You know, he does have a description. He does have the basis of his opinion. He also has a treatment note with objective findings in her hands that are very relevant to her limitations. She had swelling, she had sausage fingers, and she has consistent and credible findings or credible reports of recurrent flares of psoriatic arthritis. Let me ask you this. Of course, all these social security disability cases involve lots of medical terms and so on, and we have to rely on the experts in this. I would like to know whether you think we can hold that Dr. Shaheda's opinion was not consistent with medical evidence in this particular case with PA Neil, Dr. Ashwena, Dr. Hutchinson's report, if the ALJ didn't specifically draw that conclusion. I'm sorry, can you repeat that? The ALJ didn't say expressly that Dr. Shaheda's opinion was inconsistent with the three other doctors that I referred to. Is that a problem? Can we draw that conclusion even if the ALJ didn't expressly state that the three other physician slash medical people's opinions were different than Dr. Shaheda's? Well, Your Honor, the other medical opinions in the file show a lot of objective findings. I mean, they're inconsistent with Dr. Shaheda, right? Well, the ultimate limitations are inconsistent. See, that's what we struggle with. We're a court of appeal. We get the ALJ, we use all this evidence. You get one doctor, Dr. Shaheda, that basically confirms what you said. You get all the other evidence in the record that says just the opposite. So the ALJ has to make a decision, and it appears that the ALJ is saying, I don't credit Dr. Shaheda's as much as the others because it's inconsistent with the medical record. So what do we do with that? Well, you know, I think that certainly I think the treating doctor with more expertise should get more credit than a reviewing or consulting doctor, but that's not what the regulations are anymore. So, you know, I'm precluded from arguing that, but I certainly think that the treatment history has to be looked at, the relationship, you know, there are still criteria within the new regulations that require you to look at the background of... But I'm still struggling with we non-experts have the ALJ evaluating what three different medical people said that is inconsistent with Dr. Shaheda who said what you wanted to say. That was way the conclusion, I think, under the regs was, hey, you lose. How do we get around that under the current regs? Well, I don't think that the other doctor's opinion was consistent with their own treatment notes. With their own treatment notes? In other words, you're saying that the three, Neal's, Juana, and Hutchinson's reports were inconsistent with their own notes? Certainly Neal, and I think the ALJ said that in his opinion, is that their own treatment notes, his finding of what the exam findings were, he thought it warranted additional limitations by, you know, the ALJ agreed that the treatment notes for Neal PA warranted additional limitations. I think we're getting away from... I still get back to the same problem. Yeah. The ALJ was there, the ALJ evaluated the witnesses, evaluated the medical evidence, made a determination. Based on the current regulations, how do we get around that in your opinion? Well, if the Dr. Shaheda's opinion is consistent with his own treatment notes and consistent with other notes in a trial, I think that that should be persuasive. Even though the others went the other way? Correct. And one of the things you're arguing we need to look at is whether the ALJ gave specific enough reasons for discounting either Dr. Shaheda or the limitation symptom testimony of your client, right? Correct. And a lot of the reasons that he used to reject the symptom testimony are the same reasons that are repeated throughout the record. Just briefly, I want to talk about, they keep referencing this ER visit where she went for an ingrown toenail and fissures on her feet where she had normal gait imbalance. But the context of that record shows that she was struggling to walk during that time period. She recently fell. Her physical therapy exams from that time period show that her rehab potential was fair. She was using a walker. She was clearly struggling in that note to walk. And she was getting doctor treatment on her feet to conclude that she, you know, a normal gait imbalance finding is determinative that she can walk fine and is not struggling to walk, I think is a mischaracterization of the record. There's also some information about the physical therapy notes and about how she had improvement from the physical therapy. However, the physical therapy notes repeatedly, even the last physical therapy note, states that the aggravating factors to her pain are sitting, standing, changing positions. And she was limited to no lifting. And I think that that the important piece that I want to convey is that she may have had some improvements from her symptoms from all of these treatments. However, it did not change her capacity to function. Your time is up. Let me ask my colleagues whether either has additional questions. All right. Thank you very much. Let's hear from the government. Good morning. Catherine Watson for the commissioner. The question for this court is whether more than a mere scintilla or substantial evidence supports the ALJ's findings. And this court should affirm. Well, Miss Watson, that you know that that's that's not our court's test for better or worse. We are actually looking for clear and convincing evidence in the record to reject the symptom testimony, which is kind of at the center of this, right? The standard for rejecting Ninth Circuit's standard for rejecting symptom testimony is clear and convincing standard, clear and convincing reasons supported by substantial evidence. And we are not going to. It is our position that both tests are met, even if we adhere to the statutory standard, which is substantial evidence. But that's correct. So turning to the symptom testimony, it is our position that both substantial evidence and clear and convincing reasons were given to reject her symptom testimony. As noted, the ALJ cited to objective evidence. There is mixed evidence in the record. The ALJ discussed evidence both detracting and supporting her claim. But ultimately, the ALJ gave clear and convincing and substantial evidence to reject her testimony. The ALJ cited to P.A. Neal's exam, where there were largely unremarkable findings, such as normal range in motion in the neck of spine, even if there were some pain, normal range in motion in other areas of the body, appropriate balance, the ability to stoop without difficulty. The ALJ cited to other records and not just one. So I want to I want to move to the rejection of Dr. Shaheda's opinion. So the ALJ taught or referenced previously cited medical evidence as to why that's inconsistent. But where did the ALJ explain why the medical evidence is inconsistent with the rheumatologist's findings, for example, that the claimant can't lift more than 10 pounds, carry more than 5 pounds, walk without a cane, sit for more than 30 minutes, work without taking frequent unscheduled breaks, being absent more than three times a month? Where are those tied together in the ALJ's opinion as to why the cited evidence is inconsistent with Dr. Shaheda's clear testimony about what he believed are the limitations for the claimant working? So the ALJ cited to largely normal examination findings when citing to evidence that was inconsistent with. And I think what you're getting to is the articulation standard. And this court has held in Molina v. Estru, even when an ALJ explains his findings with less than ideal clarity, a court should still affirm if inferences can reasonably be inferred. So looking at the specific sites... But do you concede that this wasn't? I want you to finish your answer. But do you concede that there wasn't sufficient clarity here? So we have to, if we're going to uphold the commissioner's determination, we have to move to that step two? No, I wouldn't concede that there wasn't sufficient clarity. But I would say even if this court were to find there wasn't sufficient clarity, the ultimate question is whether the ALJ's findings can reasonably discern. And it's our position that the ALJ sufficiently explained his findings and they can be reasonably discerned. So turning to the sites that the ALJ cited, the records the ALJ cited when the ALJ found that it was inconsistent with the medical evidence. The ALJ cited to PA Neal's exam, specifically the ALJ cited to CAR 1356 or 10F4. That exam showed an inability to walk without an assistive device. Dr. Shineda found that she required an assistive device. That's on CAR 1356. That exam showed normal neck range of motion, albeit with pain. Normal shoulder, elbow, normal fine manipulative skills, even though Dr. Shineda found marked manipulative limitations. That exam also found that she could stoop without difficulty. That's on 1355. Dr. Shineda found that she must avoid stooping. The ALJ also cited to the fact that she described minimal symptoms with her back brace. That's on CAR 584. The ALJ, Dr. Shineda discussed both psoriatic arthritis and degenerative joint disease in his back when describing her limitations. But in contrast to debilitating back limitations, the ALJ cited to records showing minimal symptoms with the back brace. And the ALJ also cited to other examination findings showing normal gait, normal inspection of the neck. And so those findings as a whole would be substantial evidence supporting the ALJ's consistency finding. Even on the pain questions, I think that's one area where there seems to be a disconnect. I guess this is coming a little bit back to the symptom testimony. But the ALJ's opinion seems to largely summarize these things. And there's not a lot of evaluative work done in the opinion, at least on my reading of it. So what are we to do with, for example, the pain piece, which seems to be her primary complaint? Well, I turn to this court's Ninth Circuit standards as well as the regulations. The ALJ cited to both objective evidence and the ALJ also cited to improvement with treatment. And those are both clear and convincing as well as substantial evidence to support the ALJ's rejection of her pain testimony, to the extent that she alleged more severe limitations than what the ALJ found in the RFC, which was very limiting. The ALJ limited her to a reduced range of sedentary work. Sedentary work is the least exertional standard for the agency. This is more limiting than two doctors found. So as was noted previously, the ALJ found her more limited than two doctors, one who reviewed the record, one who examined her, found. But the ALJ did discuss evidence that was inconsistent or that he found inconsistent with her more extreme testimony. She testified that she was essentially non-functional, bedridden 80% of the time. But the ALJ cited to treatment notes showing that she improved with medications, her psoriatic arthritis improved with medications, and that her low back pain, similarly, she had minimal symptoms with a back brace. Do we have to, in terms of the ALJ's evaluation of the treatments there, what is said about efficacy or whether those treatments are conservative? I mean, there's a history here of quite aggressive interventions. The ALJ specifically said in CAR-19, and I believe on CAR-20 as well, that treatments notes showed that she improved with Humira and MTX, that's the psoriatic arthritis. The ALJ also listed, I believe it might have been on CAR-18 as well. So the ALJ listed the treatments that she had with psoriatic arthritis. The ALJ discussed a treatment note that was CAR-940 that discussed how she improved with Humira and MTX. And I'd also note that this court looks to the record as a whole, and it is permissible for the commissioner to cite additional evidence to support that finding. So in briefing, we also discussed treatment notes, I believe this was on 586, showing that she did wonderful with Cosintix, that she felt dramatically better with that medication. She did stop that medication during the surgery, and immediately after. If you look to CAR, hold on a second, CAR-989, in September of 2018, she was back on that medication. And with regard to her low back, the ALJ also discussed that she had minimal symptoms, her report, that she had minimal symptoms while using a back brace. And in briefing, we also noted other records that show that her pain improved following her back surgery. She discussed how her radicular symptoms were no longer constant, how she had improved functional mobility, for example, that's on CAR-902. She discussed improved pain, 988, 622. So there are also other records supporting the ALJ's findings. And finally, the ALJ discussed objective evidence that similarly would be consistent with improved functioning. PA Neal's exam, as discussed earlier, which showed largely unremarkable findings, and as noted earlier, PA Neal, who assessed her, found that she could perform a restricted range of light work. The ALJ reviewed the record as a whole and found her more limited. But those examination findings would similarly serve as substantial evidence supporting the ALJ's findings. And finally, the ALJ cited other normal examination findings as well. Examination showing normal gait, a normal neck exam, normal balance. And all of those findings would be substantial evidence supporting the ALJ's decision. If there are no further questions. All right. Thank you very much. Thank you to both counsel for your argument. The case just argued is submitted.
judges: SMITH, BENNETT, JOHNSTONE